## Case No. 4,854.

### FLANDERS v. TRIPP et al.

[2 Lowell, 15.][1]

District Court, D. Massachusetts. April, 1871.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

G. H. Palmer, for libellant.

C. T. Bonney, for respondents.

LOWELL, District Judge. The facts of this case are not far to seek. The libellant boarded the ship in the hope of being the first pilot to reach her; and he was so; but the mate refused to employ him, alleging that the ship was not fit to be navigated by the power of her sails alone, and that the master had gone on shore for a pilot and a tug; which was true. The libellant made continual claim, so to speak; but his right to recover depends not upon a quantum meruit, for he rendered no services at the request or with the consent of the agents of the respondents, but upon his statute right, as being the first pilot to offer.

It is admitted to be the general rule, that the pilot who first offers his services to an inward-bound vessel, of the class mentioned in the law, has the first right, which the master may disregard, but under pain of paying the fee, as a debt recoverable against him or his vessel or owners in a civil suit. St. 1862, c. 176, Sched. 5; Com. v. Ricketson, 5 Metc. [Mass.] 412; The America [Case No. 289]; Ex parte McNiel, 13 Wall. [80 U. S.] 236. The respondents insist that there is an implied exception of vessels which cannot be navigated by the pilot without further assistance in the nature of a salvage or quasi salvage service. Upon this point I have not been referred to any decisions of the Massachusetts courts, and must therefore decide it upon my best judgment of the true intent of the statute. The better opinion is, that pilots are not bound to take

charge of a wrecked or disabled vessel for the established pilotage fee, because such vessels require for their successful navigation more than the ordinary skill, labor, and risk that pilots impliedly contract to give in return for that fee. They may, therefore, decline to act in such cases, if the master insists that he will only pay them wages: The Frederick, 1 W. Rob. Adm. 17. There are many other cases on the subject of pilots as salvors which virtually decide the same point, among the more important of which are Hobart v. Drogan, 10 Pet. [35 U. S.] 108; The Wave [Case No. 17,297]; on appeal [Id. 17,300]; Hope v. The Dido [Id. 6,679]; Lea v. The Alexander [Id. 8,153]; The Jonge Andries, Swab. 226; on appeal, 11 Moore, P. C. 313; Dexter v. The Richmond [Case No. 3,865]; The Hebe. 2 W. Rob. Adm. 530; The Susan [Case No. 13,630].

Some apparent discrepancies in the judgments of different courts may be reconciled by the consideration, that a pilot, once engaged on board a vessel, has become bound to render his best services, and is under an obligation, for the time being, somewhat analogous to that of the master; but before his engagement he is merely an officer appointed by public authority, enjoying a monopoly, and undertaking to render certain specified services, at whatever inconvenience short of imminent danger to his life, for a reward which the governing body has seen fit to prescribe as sufficient to compensate him. Such a person is not to set up the state of the weather, or any consideration of that sort, as making him a salvor; but to say that he is bound by his official position to do something entirely different from the duty which the very nature of the office points out, as, for instance, to tow the ship into port, without further compensation than a pilot's wages, cannot be maintained, and is not supported by the weight of authority. The decision of Judge Betts in The Wave, in which the subject was very fully and ably discussed, was reversed by the circuit court on the single ground that a statute of New York made it the duty of pilots to assist vessels in distress, and provided for an extra compensation, though not for salvage. The Wave v. Hyer [Case No. 17,300]. Two other cases in the same volume recognize the true doctrine that if pilots, not already engaged, are asked to perform duty which is not only pilotage, but something more, they are entitled to more than the pilot's fee. Hope v. The Dido [supra]; Lea v. The Alexander [supra]. What was done with the statute in the former of these cases, which appears to have arisen within the jurisdiction of New York, I do not know. As I find nothing in the statute law of this state that requires pilots to assist vessels in distress, or provides for any special mode of compensation in such cases, I consider that the general rule holds here, that they are not bound to be salvors, without salvage compensation.

I am of opinion that the rule is reciprocal, and that as a pilot is not bound to take upon himself the duty of a salvor of a disabled vessel, without the advantages of that position, so a ship which stands in need of a salvage service is not bound to accept the offer of pilotage, if her need is for something more, which the pilot cannot supply. In this case, the General Scott would probably have been safe at her wharf. long before the libellant discovered her, had it not been for the disaster which obliged her to anchor and wait for a steamer; and the master had actually engaged both a steamer and a pilot, though they had not yet reached the vessel. Under the circumstances, the offer to pilot the ship was an offer to do what no one could do until the ship was either repaired or taken in tow. If the ship had been coming up in tow, but without a pilot, or if the master had engaged a steamer, but not a pilot, the case might be different. I hold, therefore, that this ship was not bound to accept the offer of a pilot, under the penalty of paying his fee if his services were refused.